044830/14570/JDH/CCC

# UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> RURAL KING SUPPLY, INC., RURAL KING HOLDING COMPANY, RKDS, LLC, RURAL KING DISTRIBUTION & MANAGEMENT, INC., RK HOLDINGS, LLP, RURAL KING RANTOUL, RANTOUL RURAL KING SUPPLY, INC., R.K. ADMINISTRATIVE SERVICES, LLC, STEVEN R. KRUSE, MATTHEW CONNER, Individually and as Independent Administrator of the ESTATE OF CAITLIN B. CONNER, AMANDA CONNER, Individually and as Mother and Next Friend of LILY A. LAWRENCE, and DEBRA CONNER, <br><br> Defendants. | Case Number  3:19-cv-03154 |

### NAVIGATORS SPECIALTY INSURANCE COMPANY'S
### MOTION FOR SUMMARY JUDGMENT
### PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56

NOW COMES Plaintiff, NAVIGATORS SPECIALTY INSURANCE COMPANY ("NSI"), by and through its attorneys, CASSIDAY SCHADE LLP, and for its Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56, states as follows:

### I.     INTRODUCTION

NSI seeks a declaration that it has no duty to defend or indemnify Rural King Holding Company, RK Holdings, LLP, Rural King Rantoul, Rantoul Rural King Supply, Inc., R.K.

Administrative Services, LLC (collectively, "Rural King"[1]), and Rural King's employee, Steven R. Kruse ("Kruse"), in conjunction with the wrongful death, survival, Family Expense Act, and general negligence claims by the Conner family that arose out of motor vehicle accident that occurred on June 8, 2017.  The Conner family has alleged that on the date in question, Kruse, was working within the scope of his employment for Rural King while driving his 2000 Jeep Cherokee Laredo southbound on Interstate 57 at or near Milepost 237.  The Conners further allege that Kruse was distracted by a text message that came through on a cellphone provided by Rural King, and took his eyes momentarily off the road.  According to the underlying First Amended Complaint by the Conners, when Kruse's attention returned to the road, he left himself no time to avoid colliding with the rear of Debra Conner's Chevrolet Cobalt, forcing Debra's Cobalt into the back of a semi tractor trailer truck. As a result of this collision, 10-year old Caitlin Conner, who was a passenger in the back-seat of Debra's Cobalt, lost her life, and both Debra and passenger Lily Lawrence sustained serious physical injury. NSI contends that because this accident occurred as the result of an employee of Rural King's "use or operation" of a motor vehicle, the "Aircraft, Auto Or Watercraft" exclusion within the Commercial Lines Policy it issued Rural King bars coverage. For the reasons stated herein, NSI is entitled to summary judgment.

## II.  UNDISPUTED MATERIAL FACTS

1. On the date of the accident, June 8, 2017, Kruse was an employee of Rural King. See ¶3 of each count of the Conners' First Amended Complaint.

2. On the date of the accident, June 8, 2017, Kruse was acting within the scope of his employment with Rural King when he was driving his 2000 Jeep Cherokee Laredo

---

[1] As of the filing of this motion, NIS has dropped Rural King Supply, Inc., RKDS, LLC, and Rural King Distribution & Management, Inc. as defendants in this declaratory judgment suit.

southbound on Interstate 57 at or near Milepost 237. See ¶16 of each count of the Conners' First Amended Complaint.

3. The Conners' bodily injuries arose out of Kruse's "use or operation" of a motor vehicle on June 8, 2017. See ¶s 13 and 18 of the Conners' First Amended Complaint.

### III.  ARGUMENT

**A.  SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Latzke v. Continental Cas. Co.*, 248 F. Supp. 2d 797, 799 (C.D. Ill. 2003); Fed. R. Civ. P. 56(c). Summary judgment is "particularly appropriate in cases involving the interpretation of contractual documents." *Murphy v. Keystone Steel & Wire Co.*, 850 F. Supp. 1367, 1372 (C.D. Ill. 1994). In evaluating a summary judgment motion, the court "focuses on whether any material dispute of fact exists that would require a trial." *Latzke*, 248 F.Supp.2d at 799. "In making this determination, the court construes all facts and draws all reasonable inferences in favor of the nonmoving party." *Latzke*, 248 F.Supp.2d at 799. "Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, however, the nonmoving party must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial." *Latzke*, 248 F.Supp.2d at 799.

**B.  THE INSURER'S DUTY TO DEFEND**

"Illinois courts determine an insurer's duty to defend by comparing the allegations in the underlying complaint to the relevant provisions of the insurance policy." *Health Care Industry Liability Ins. Program v. Momence Meadows Nursing Center, Inc.*, 566 F.3d 689, 694 (7th Cir. 2009), referencing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 107-08 (Ill.

1992). "An insurer is obligated to defend its insured if the underlying complaint contains allegations that potentially fall within the scope of coverage." *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688 (7th Cir. 2008), citing *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146, 154 (Ill. 2005). "This is true even if the allegations are groundless, false, or fraudulent, and even if only one of several theories of recovery alleged in the complaint falls within the potential coverage of the policy." *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 223 Ill.2d 352, 363 (Ill. 2006), referencing *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 73 (Ill. 1991). An insurer may refuse to defend only if "it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy." *Health Care Industry Liability Ins. Program*, 566 F.3d at 694, quoting *Valley Forge Ins. Co.*, 223, Ill.2d at 363.

**C.    THE NSI POLICY**

NSI issued Commercial Lines Policy No. GA1 7CGL1 25587IC (the "Policy") to "RK Holdings" as the Named insured. The Policy provided a $1 million limit of liability for each occurrence, and a $2 million general aggregate limit for the policy period of March 31, 2017 to March 31, 2018. The Policy included a "Named Insured" Endorsement that expanded the definition of "Named Insured" to include all Rural King entities named as defendants in the caption of the current declaratory judgment litigation.  The Policy also included a "Self-Insured Retention – Claim Expenses Eroding the Retention" endorsement that indicated NSI's coverage obligations would not take effect until Rural King had paid a $100,000 Self-Insured Retention. The policy's Self-Insured Retention was eroded through payment of various claims expenses.

The Insuring Agreement of the Policy states:

> **SECTION I — COVERAGES**

4

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    (1) The amount we will pay for damages is limited as described in Section **III** — Limits Of Insurance; and

    (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments — Coverages **A** and **B.**

    b. This insurance applies to "bodily injury" and "property damage" only if:

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

    (2) The "bodily injury" or "property damage" occurs during the policy period; and

    (3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** — Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any con-

5

      tinuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

In addition to the Rural King entities listed in the "Named Insured" Endorsement, the Policy also recognizes the following as "insureds:"

 **2.** Each of the following is also an insured:

  **a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

Exclusion g. to the Policy, titled "Aircraft, Auto Or Watercraft," states that coverage is precluded for:

 g. Aircraft, Auto Or Watercraft

  "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

  This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

6

**D.  APPLICATION OF THE AUTO EXCLUSION**

In no uncertain terms, the Policy's "Aircraft, Auto Or Watercraft" Exclusion (the "Auto Exclusion") removes coverage when it has been alleged that the bodily injury at issue arose from the use of a vehicle that is owned or operated by an insured. In other words, to arrive at a determination of "no coverage," three questions need to be answered in the affirmative:

- Did the bodily injury arise out of the use of the vehicle?
- Did the activity alleged constitute "use" of the vehicle?
- Was the owner or operator of the vehicle an insured?

In the present case, all three questions must be answered in the affirmative for both Rural King and Kruse.  Accordingly, the Auto Exclusion applies to preclude coverage to either insured.

"Arising Out Of"

The use of the phrase "arising out of" in the Policy's Auto Exclusion is relatively straight-forward and free from any interpretational pitfalls. The phrase speaks to the causal connection that must exist between an accident or injury and the use of a vehicle in order for the Auto Exclusion to take effect.  Illinois courts have held the phrase to mean variously "originating from," "having its origin in," "growing out of" or "flowing from." *Id*., referencing *Western Casualty & Surety Co. v. Branon*, 463 F. Supp. 1208, 1210, 1979 U.S. Dist. LEXIS 14962, *3 (E.D. Ill. 1979).  When used in an exclusion, the phrase must be "liberally construed" in favor of the insured, but can nevertheless be satisfied with a simple "but for" causation analysis. *Electric Ins. Co*., 356 F.Supp.2d at 966, referencing *Md. Cas. Co*., 126 Ill.App.3d at 154. "'But for' causation exists when something would not have happened but for some other prior act." *Electric Ins. Co*., 356 F.Supp.2d at 966. As defined by Black's Law Dictionary, "but for causation" means "[t]he cause without which the event could not have occurred." *Levy v. Minnesota Life*

7

*Ins. Co.*, No. 03 C 5141, 2006 U.S. Dist. LEXIS 88948, at *20 (N.D. Ill. Dec. 4, 2006), citing Black's Law Dictionary at 212 (7th Ed. 1999). Translated to the context of the Policy's Auto Exclusion and its use of the phrase "arising out of," "but for" causation is satisfied if the alleged accident or injury could not have occurred except through the use of a motor vehicle.

At ¶18 of all 22 counts of the underlying First Amended Complaint, the Conners allege that Rural King, "individually and through its duly authorized agents and employees, including [Kruse]" was negligent, *inter alia*, by either "[o]perat[ing], manag[ing], control[ing] and [driving] a motor vehicle into a collision with the rear end of the vehicle then and there operated by DEBRA J. CONNER," or "[c]omitt[ing] aggravated use of an electronic communication device by operating a motor vehicle on a roadway while using a cellphone and caus[ing] a motor vehicle accident that resulted in death, great bodily harm, disfigurement and permanent disability, in violation of 625 ILCS 5/12-610.2(b-5)." In other words, in every count of the *Conner* Complaint, regardless of the theory of liability advanced, the Conners allege that their various injuries were caused by the improper use of a motor vehicle – Kruse, directly, and Rural King, vicariously acting through its employee, Kruse. Unequivocally, the Conners allege that the June 8, 2017 accident could not have occurred "but for" Kruse/Rural King's use of a motor vehicle.

Here, the entire face of the underlying complaint is premised on the allegation that the Conners would not have suffered in the manner in which they did, had Kruse not been operating his 2000 Jeep Grand Cherokee Laredo within the scope of his employment with Rural King, on June 8, 2017, in a southbound direction on Interstate 57 at or near .52 miles north of Milepost 237. As such, this case is in line with *Northbrook Prop. & Cas. Co. v. Trans. Joint Agreement*, 194 Ill.2d 96, 98-99 (Ill. 2000) and *Cincinnati Ins. Co. v. William F. Braun Milk Hauling, Inc.*,

8

988 F.Supp.2d 895, 898-901 (S.D. Ill. 2013), where the courts found that "auto exclusions" worded nearly identically to the NSI Policy's "Auto Exclusion" would remove the insurers' duty to defend in situations where the injuries alleged clearly arose out of the use of a motor vehicle. In *Northbrook*, the Illinois Supreme Court determined that an insurer had no duty to defend a pair of school districts under a CGL policy with an "auto exclusion" because "[a]llegations that the school districts inadequately planned and inspected bus routes or failed to warn bus drivers of potential hazards along the routes [were] nothing more than rephrasings of the fact that the students' injuries arose from the school districts' use or operation of a motor vehicle." *Northbrook Prop. & Cas. Co.*, 194 Ill.2d at 99. Similarly, in *Cincinnati Ins. Co.*, the U.S. District Court held that negligence counts against a trucking company that alleged a "fail[ure] to have a safe traffic flow plan in place for the duration of the oil spill cleanup operation;" a "fail[ure] to warn motorists of the ongoing spill cleanup;" a "fail[ure] to provide a sufficient number of flagmen in order to appropriately warn motorists of the ongoing work concerning the cleanup;" a "fail[ure] to employ the proper number and placement of flagmen for the duration of the oil spill cleanup operation;" and a "fail[ure] to mark the cleanup area with proper signs and barricades" all constituted "injuries that [arose] from [the insured's] use of an automobile," such as would trigger an "auto exclusion" in a commercial automobile liability insurance policy. *Cincinnati Ins. Co.*, 988 F.Supp.2d at 898.

"Use of a Vehicle"

With each count in the Conners' First Amended Complaint alleging at ¶3 that Kruse was "an employee and/or agent" of Rural King, and at ¶18 (among others) that Rural King acted "individually and through its duly authorized agents and employees, including [Kruse]" in regard to the operation of a motor vehicle on the date of the accident, the underlying pleading has

9

clearly established that both Kruse and Rural King "used" the vehicle in question in the sense that would trigger the Policy's "Auto Exclusion." As a general rule, not only can corporations only act through their agents, *Angell Invs., L.L.C. v. Purizer Corp.*, 2002 U.S. Dist. LEXIS 170, *12 (N.D. Ill. January 4, 2002), but, in Illinois, courts have specifically recognized that corporations can and do operate motor vehicles through their employees or agents. *Cincinnati Ins. Co. v. Blue Cab Co.*, 2015 U.S. Dist. LEXIS 40895, *13 (N.D. Ill. March 31, 2015)("Although Blue Cab, as a corporation, could not itself operate a car, it could operate the car through its employees or agents."). Courts ascribe the act of driving (or of any similar volitional act) to an employee's employer either through basic agency principles, or the doctrine of *respondeat superior*.

    For example, in *Coleman v. Charlesworth*, 157 Ill.2d 257, 261 (1993), the estates of four deceased hot air balloon passengers and the lone surviving passenger of a ballooning accident filed a declaratory judgment complaint against the company that had offered them a commercial sightseeing balloon flight, seeking a declaration as to whether the company's aviation premises and products liability policy afforded them coverage. The ballooning company did not, itself, provide the balloon rides; rather, the company partnered with third parties that could provide the same. The policy at issue in *Coleman* was written to exclude "bodily injury or property damage caused by … any Ships, Vessels, Crafts, or Aircraft owned, chartered, used, or operated by or on account of the assured [sic]," *Id.* at 260-61, where the injuries sustained were due to work or duties carried out either by the ballooning company or one of its employees. The question presented to the court was whether the pilot of the parties' ill-fated balloon ride qualified as an employee, agent, or joint venture such that the ballooning company could be said to have "used" the balloon, through the remote agency of the pilot, such as to trigger the exclusion to coverage.

Because the parties' complaint very clearly alleged that the balloon pilot was in an employer/employee relationship with the ballooning company, the court found that the balloon was being "used and operated" by the balloon company through the pilot at the time of the accident, thereby taking the balloon passengers' claim out of coverage. In the court's words:

> "Plaintiffs' complaint alleges that the balloon pilot … was an employee, agent, and joint venturer of [the ballooning company]. Since plaintiffs allege that such a relationship existed between [the] pilot [and the ballooning company], the balloon was being used and operated by [the ballooning company], via [the pilot], at the time of the accident. Under the exclusion provisions … however, bodily injuries which are caused by aircraft used or operated by or on account of [the ballooning company] are not covered. Thus, since the hot air balloon at the time in which plaintiffs' injuries were incurred was admittedly being operated by an employee, agent, and joint venturer of [the ballooning company], the exclusion provision bars coverage." *Id.* at 261.

The Conners' First Amended Complaint, like the complaint at issue in *Coleman*, establishes an employee/employer relationship through which Rural King can be said to have "used or operated" the vehicle that caused the accident on June 8, 2017. Under Illinois law, the corporation acts through its agents or employees and the Policy's Auto Exclusion applies to both the corporation and its agents or employees.

Similarly, in the case of *Michael Carbone, Inc. v. General Accident Ins. Co.*, 937 F.Supp. 413, 423 (E.D. Pa. 1996), the court was asked to determine whether an employee's rear-ending of another vehicle while en route to a customer service call constituted "use" of the vehicle by the employee's corporate employer. Like the Policy issued to Rural King, the CGL policy in *Michael Carbone, Inc.* contained an "automobile exclusion" that removed coverage when the alleged bodily injury or property damage arose out of the ownership, maintenance, use, or entrustment to others of any vehicle that was owned, operated, rented, or loaned to any insured. As the policy defined an "insured" to include any employee of Michael Carbone, Inc., so long as

the act of the employee that caused the bodily injury or property damage occurred within the scope of the employee's employment, and the allegations against the employee clearly established that the employee was acting within the scope of his employment at the time of the accident, the court determined that the employee's driving and negligence could be attributed to his corporate employer under the doctrine of *respondeat superior*. To justify that transitive attribution of fault from the employee to the employer, the court in *Michael Carbone, Inc*. referenced the Ohio decision of *Barge v. Jaber*, 831 F.Supp. 593, 602 (S.D. Ohio 1993) in which it was held:

> "It is well established that a corporation is an artificial entity that can only act through its agents. Thus, acts of an employee carried out within the scope of his employment, that is[,] acts which the employee has been expressly, impliedly or apparently authorized to do and are done for the benefit of the corporation, are properly imputed to the corporation."

The reasoning of *Barge* echoes that in the previously referenced *Cincinnati Ins. Co. v. Blue Cab Co.*, 2015 U.S. Dist. LEXIS 40895 (N.D. Ill. March 31, 2015) case with regard to the attribution of an employee's employment-related acts to that employee's employer. See also *Discover Property & Casualty Insurance Co. v. Lexington Insurance Co.*, 664 F.Supp.2d 1296, 1300-01 (S.D. Fla. 2009)(A corporation "necessarily can perform its authorized functions only through the agency of" its employees acting within the scope of their employment); *Medical Staffing Network, Inc. v. New Hampshire Ins. Co*., 14 Fla. L. Weekly Fed. D 390 (U.S. S.D. Fla. 2001), citing *Hamilton v. Carell*, 243 F.3d 992, 1001 (6th Cir. 2001)("Under the doctrine of *respondeat superior*, 'an employer is liable, despite having no fault whatsoever, for the acts of its employees taken within the scope of their employment.'")

In short, the Conners' repeated allegations of agency throughout the First Amended Complaint, identifying Kruse as Rural King's acting representative on the day of the accident,

clearly establish that both Kruse *and* Rural King could be said to have "used or operated" the vehicle such as to trigger the Policy's "Auto Exclusion."

"Insured Status"

As was noted previously, the NSI Policy defines an "insured" to include Rural King's employees, but only for acts within the scope of their employment or while performing duties related to the conduct of Rural King business. Not only does ¶3 of each of the underlying *Conner* counts describe Kruse as being Rural King's employee, but in ¶16 of each count, the Conners also allege that when Kruse was driving south on Interstate 57 on the date of the accident, he was doing so within the "course and scope" of his employment and/or agency for Rural King. In other words, according to the allegations of the Conners, Kruse qualifies as an "insured" under the Policy, alongside Rural King itself.

## **CONCLUSION**

As the three questions posed at the beginning of the "Application of the Auto Exclusion" subsection are each answered in the affirmative for *both* Rural King *and* Kruse, the Policy's "Auto Exclusion" applies to preclude coverage for the Conner accident. Both Rural King and Kruse are considered "insureds" under the terms of the policy. Both Rural King and Kruse "used" the vehicle that was involved in the June 8, 2017 accident – Kruse directly, and Rural King, through principles of agency, vicariously. And both Rural King and Kruse are alleged to have caused the bodily injury by acting in such a way that injuries "arose out of" Rural King and Kruse's use of the vehicle. In other words, when the allegations of the Conners' First Amended Complaint are compared to the terms of the NSI Policy, all elements of the Policy's "Auto Exclusion" are satisfied, necessitating a finding of "no coverage" for the Conners' claim.

WHEREFORE, Plaintiff NAVIGATORS SPECIALTY INSURANCE COMPANY, respectfully requests that this Court grant its motion for summary judgment, find and declare that Plaintiff has no duty to defend or to indemnify RURAL KING HOLDING COMPANY, RK HOLDINGS, LLP, RURAL KING RANTOUL, RANTOUL RURAL KING SUPPLY, INC., R.K. ADMINISTRATIVE SERVICES, LLC, STEVEN R. KRUSE for the accident that occurred on June 8, 2017, also find and declare that MATTHEW CONNOR, individually and as Independent Administrator of the ESTATE OF CAITLIN B. CONNOR, AMANDA CONNOR, individually and as Mother and Next Friend of LILY A. LAWRENCE, and DEBRA CONNER are all bound by this coverage ruling, and provide such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

CASSIDAY SCHADE LLP

By: John D. Hackett
One of the Attorneys for Plaintiff,
NAVIGATORS SPECIALTY INSURANCE COMPANY

John D. Hackett (ARDC No. 6196747)
Christopher C. Cassidy (ARDC No. 6273455)
CASSIDAY SCHADE LLP
111 North Sixth Street, 2nd Floor
Springfield, IL 62701
(217) 572-1714
(217) 572-1613 (Fax)
jhackett@cassiday.com
ccassidy@cassiday.com

14

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 30, 2021, I electronically filed the foregoing **Navigators Specialty Insurance Company's Motion for Summary Judgment** with the Clerk of the Court using the CM/ECF system. The electronic case filing system sent a "Notice of E-Filing" to the parties of record listed on the electronic court service list.

                                                       /s/Christopher C. Cassidy

9497076 CCASSIDY;CCASSIDY